UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INSAF ELTAYIB,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:21-cv-55

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **vacate and remand the Commissioner's decision for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).**

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on July 27, 2018, alleging that she had been disabled as of January 1, 2007, due to history of back surgery, back pain that spreads all through the right

leg, diabetes – insulin dependent, high blood pressure, shingles, thyroid problems, and herniated disc. (PageID.135–36, 212–15.) Plaintiff filed a separate application for SSI on March 27, 2019. (PageID.216–19.) Plaintiff was 54 years old at the time she filed her DIB application and 43 years old at her alleged onset date. (PageID.135.) Plaintiff had graduated from high school. (PageID.81.) Plaintiff's past relevant work was as a nurse assistant and a security guard or attendant at the U.S. Embassy in Nigeria. (PageID.63, 82–83.) After Plaintiff's application was denied, she requested a hearing before an ALJ.

On May 27, 2020, ALJ Amy L. Rosenberg held a telephonic hearing and received testimony from Plaintiff and Joanne Pfeffer, an impartial vocational expert (VE). (PageID.70–116.) At the hearing, Plaintiff amended her onset date to January 1, 2014. (PageID.76.) On May 27, 2020, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she had not been disabled from January 1, 2014, though the date of the decision. (PageID.54–65.) The Appeals Council denied Plaintiff's request for review on December 30, 2020. (PageID.40–42.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on January 19, 2021.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since her amended alleged onset date, the ALJ found that Plaintiff suffered from severe impairments of lumbar degenerative

---

Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

disc disease with herniated disc and stenosis and diabetes mellitus. (PageID.56.) The ALJ determined that Plaintiff's hyperlipidemia, hypertension, gastroesophageal reflux disease, diabetic-related vision conditions, and non-obstructing renal stone were either non-severe or not medically determinable impairments. (PageID.57.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.51–54.) The ALJ considered listing 1.04 relating to spine disorders. She further evaluated Plaintiff's diabetes mellitus in accordance with SSR 14-2p. (PageID.57–58.)

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that:

> she can occasionally climb ramps and stairs, and should never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should not work at unprotected heights and should not operate dangerous moving machinery.

(PageID.58.)

At step four, the ALJ found that Plaintiff had the ability to perform her past relevant work as a U.S. Embassy security "checkroom attendant." (PageID.63.) Accordingly, the ALJ found that Plaintiff was not disabled.

## DISCUSSION

Plaintiff raises two issues in her appeal:

(1) The ALJ's Findings and Determinations Regarding Plaintiff's Past Relevant Work at Step Four of the Sequential Process are not Supported by Substantial Evidence and Fail to Comply with the Requirements of SSR 82-61, SSR 82-62, and SSR 00-4p, with the ALJ Also Failing to Fully Develop the Record as Required by Law; and

(2) The ALJ's Assessments of Plaintiff's Impairments for the Criteria in Listing 1.04 is not Supported by Substantial Evidence, as the Evidence Shows Plaintiff Meets This Listing's Criteria

I.     **Step Four Determination**

Plaintiff contends that remand is warranted because the ALJ misconstrued her testimony regarding the job duties of her security position at the U.S. Embassy in Nigeria and, therefore, erred in concluding that she performed this past relevant work at a sedentary level of exertion. Plaintiff further contends that, in light of her hearing testimony, the ALJ's determination that the duties of Plaintiff's security position were consistent with the duties of the occupation of "checkroom attendant," Dictionary of Occupational Titles (DOT) Code 358.677-010, classified as light work, was not supported by substantial evidence. Plaintiff further argues that, due to ambiguity in her testimony—resulting largely from the hearing being held by telephone and Plaintiff's language and translation barriers—the ALJ erred by failing to obtain additional evidence or clarification needed for an accurate job description of the security position and to determine accurately whether Plaintiff retained the RFC to perform this past relevant work, as required by SSR 82-61 and 82-62. Plaintiff argues that the ALJ could have obtained this information either by contacting her former employer, the U.S. Department of State, or by holding a supplemental hearing with a translator. Finally, Plaintiff argues that the ALJ failed to comply with SSR 00-4p when she did not ask the VE about any conflict between her testimony and the DOT.

The claimant has the burden at step four of proving that her impairments preclude her from performing her past relevant work. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The claimant satisfies this burden by showing that she cannot perform her past relevant work as actually performed and "as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (1982); *see Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002). When determining whether a claimant's RFC permits her to perform her past work, an ALJ may look to a number of sources for information about the job,

6

including the claimant, "other people who know about [the] work," VE testimony, or the DOT. 20 C.F.R. § 404.1562(b)(2), 416.960(b)(2). The use of a VE's testimony is permissive, not mandatory. *See Maggard v. Comm'r of Soc. Sec.*, No. 1:14-CV-799, 2015 WL 5033919, at *4 (W.D. Mich. Aug. 25, 2015) (citing, among others, *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). The Social Security Administration has provided further guidance for determining the demands of a claimant's past relevant work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles, etc.*, on the requirements of the work as generally performed in the economy.
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work).

SSR 82-62, 1982 WL 31386, at *3 (1982).

The ALJ, Plaintiff's counsel, and the VE spent much of the hearing questioning Plaintiff about the functions of her security position and seeking clarification of her testimony. Plaintiff testified that she would check "a bag or something" that a visitor might have to ensure that the visitor did not possess dangerous or forbidden items. (PageID.83.) The ALJ then sought to

determine whether Plaintiff sat or stood to do her job. When asked about this function, Plaintiff said, "I have both these." (*Id.*) The ALJ inquired further:

> Q Okay. So was -- how many hours a day total would you say you were having to stand doing that job?
>
> A I don't have to stand. But I guess, like, maybe it was, like, ten minutes -- five minutes. They let them go into the inside, and when I come back I have to get them and then I go back.
>
> Q Okay. So it was just short -- five, ten minutes?
>
> A Yeah.
>
> Q Up on your feet, and then you'd be sitting down?
>
> A Yeah.
>
> Q So most of the day sitting down?
>
> A Most of the day. Yeah.

(PageID.85.) Counsel then intervened to try to clear up Plaintiff's testimony:

> ATTY: Okay. Thank you. . . . Throughout that day you mentioned that you'd get up for five, ten minutes -- you'd walk around. And then you'd go sit back down. How many times throughout the day were you getting up and walking for five, ten minutes at a time? Did that equate to half the day? A quarter of the day? Three-quarters of the day? In other words, how much time were you actually up and moving around?
>
> CLMT: It's maybe it was, like, most of the day because we did have to go, like, five, ten minutes to sit down for break. . . . But sometimes you have a lot of making like, go for nothing to up and down – stand and everything. . . .

(PageID.85.) The ALJ found Plaintiff's testimony "still not completely clear," but concluded from the information in her work history report that "it sounded like mostly sitting." (PageID.85.)

When the ALJ questioned the VE, the VE said that she still had questions about the position that precluded her from classifying it according to the DOT. Plaintiff then provided further details about what the job did and did not entail, including that she did not answer phones; did not communicate with anyone else other than the visitors she searched; did not use or monitor T.V.

8

screens or security cameras; did not carry a weapon or patrol the building; and did not issue passes, keep a log of visitors, or check I.D.s. (PageID.100–03, 105–07.) Plaintiff said that the Marines carried guns, patrolled the building, and checked visitor I.D.s. (PageID.105–08.) Plaintiff also said that the essential functions of her job were to search the visitors and their belongings, confiscate prohibited items (mostly cell phones) while they were inside the embassy, and return them to the visitors when they left. (PageID.107–08.) She said that she "would stand beside the Marine" and when visitors would come "they would tell me to go see them," and she would "just take them to the side" and search them and their bags or personal items. (PageID.102, 105, 107.)

The VE identified several possible jobs from the DOT to compare to the Plaintiff's security position—none of which accurately matched its job functions—but ultimately settled on Property Clerk, DOT 222.367–054, a light job at the low end of the skilled level. (PageID.103, 110.) The VE opined that Plaintiff performed the job at the unskilled and sedentary levels. (PageID.111.) The VE testified that a person limited to sedentary work could perform the Property Clerk position as Plaintiff actually performed it. (PageID.113.)

At step four in her decision, the ALJ rejected the VE's classification of the security position as Property Clerk because the tasks associated with the job did "not sound remotely like the job the claimant described." (PageID.64.) The ALJ then put forth her own analysis:

> Instead, my review of Occubrowse revealed a job much more consistent with the work the claimant actually performed. This job is checkroom attendant (DOT 358.677-010) classified as light and unskilled with a SVP of 2. The duties of DOT 358.677-010 are as follows:
>
>> Stores wearing apparel, luggage, bundles, and other articles for patrons of an establishment or employees of business establishment, issuing claim check for articles checked and returning articles on receipt of check.
>
> This is a much closer match for the claimant's job duties. She was storing articles for visitors to the Embassy, and returning those items to their owners upon their departure.

9

> Accordingly, I find that the claimant's job at the US Embassy is closest to that of Checkroom Attendant, but the job was sedentary as the claimant actually performed the job.
>
> In comparing the claimant's residual functional capacity for sedentary work with the physical and mental demands of her past relevant work, I find that the claimant is able to perform her past relevant work at the US Embassy as a Checkroom Attendant as actually performed, which was is [sic] a seated position.
>
> While I have not accepted the vocational expert's classification of that job, the end result is the same. The vocational expert testified that a person with the claimant's residual functional capacity could only perform this job as the claimant actually performed it. I make the same finding.

(PageID.64–65.)[2]

The ALJ's step-four findings are not supported by substantial evidence. Close examination of Plaintiff's testimony reveals that, while her job functions were analogous to those of a Checkroom Attendant, there were significant differences. At a minimum, Plaintiff's testimony established that, unlike a Checkroom Attendant, she would stand next to a Marine and search visitors and their bags and other items when they arrived at her station. A Checkroom Attendant does not do these things. Plaintiff also indicated, in response to her counsel's question, that she was "up and moving around" "most of the day." (PageID.85.) She said that "sometimes you . . . go [from] nothing to up and down – stand and everything." (*Id.*) Admittedly, Plaintiff's testimony—evinced by the transcript—was difficult to follow at times. Although Plaintiff affirmed that she could read and write English (PageID.81), she also said that "sometimes it's so hard to understand" (*id.*). Plaintiff's non-native-English-speaker status, coupled with the telephone mode of the hearing, likely contributed to the confusion and misunderstanding that all parties displayed.

---

[2] Plaintiff does not take issue with the ALJ's use of OccuBrowse. OccuBrowse is a software program that incorporates data from the Bureau of Labor Statistics. Among other things, it is used to determine the availability jobs in the local and national economies. *See McFerren v. Comm'r of Soc. Sec.*, No. 3:11-CV-1677, 2012 WL 1865467, at *17–18 (N.D. Ohio May 4, 2012), *report and recommendation adopted*, 2012 WL 1866581 (N.D. Ohio May 22, 2012).

The ALJ's findings are also without much support in the record in terms of the exertional nature of the security position. During the hearing, the ALJ pointed to information in Plaintiff's work history report as evidence that the security position involved mostly sitting. (PageID.85.) The Commissioner cites the same report in her brief as support for the ALJ's finding. (ECF No. 20 at PageID.908.) However, the details in the report require careful scrutiny. First, the form indicates that Plaintiff received assistance in completing it because she could not "read/write English." (PageID.288.) Second, her answers about the amount of walking/sitting she did in her security position conflicted with her hearing testimony that she was up and moving around "most of the day." (PageID.85, 282.) The same was true of the job description, "Check ID's, made sure area was safe." (*Id.*) Plaintiff testified that she did neither of these things. (PageID.105–08.) Considered against Plaintiff's testimony, the work history report is a slender reed upon which to assess the exertional requirements of Plaintiff's past relevant work. *See Simpson v. Colvin*, No. 3:11-0481, 2013 WL 4456383, at *15 (M.D. Tenn. Aug. 16, 2013), *report and recommendation adopted*, 2013 WL 4780082 (M.D. Tenn. Sept. 4, 2013) (finding that vague work history reports which contained inconsistencies provided insufficient "support for the ALJ to make a 'reasoned determination" that the plaintiff is able to perform her past relevant work." (quoting *Johnson v. Astrue*, No. 3:08-CV-222, 2009 WL 2168671, at *11 (E.D. Tenn. July 17. 2009)).

In short, the ALJ overlooked or failed to reconcile with other evidence Plaintiff's testimony indicating both that her security job duties were different from those of a Checkroom Attendant and that her job duties did not match the exertional requirements of a sedentary position. *See* 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). The Court thus concludes that remand is appropriate to allow the Commissioner to properly develop the record and the fulfill the requirement of SSR 82-62 that "every effort must be made to secure evidence

11

that that resolves the issue [of PRW demands] as clearly and explicitly as circumstances permit."[3] 1982 WL 31386, at *3. This effort on remand may include contacting Plaintiff's former employer, in accordance with SSR 82-61 and 82-62, or obtaining additional information or clarification from Plaintiff about her security position at a supplemental hearing, as the ALJ deems necessary or appropriate.

In light of the Court's decision to remand on the issue of the ALJ's step-four finding, it need not address Plaintiff's step-three issue, which Plaintiff may raise with the ALJ on remand.

Plaintiff also requests a hearing with an interpreter. The Court deems that issue best left to the ALJ's discretion after consideration of Plaintiff's ability to understand and communicate in English at the hearing.

## **CONCLUSION**

For the reasons stated above, the Commissioner's decision will be **reversed and remanded** for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

An Order consistent with this Opinion will enter.

Dated: July 18, 2022            /s/ Sally J. Berens
                                SALLY J. BERENS
                                U.S. Magistrate Judge

---

[3] In light of the reasons for remand set forth in this Opinion, the Court need not address Plaintiff's argument that the ALJ failed to comply with SSR 00-04p. Under that policy, an ALJ has an affirmative responsibility to ask the VE about any possible conflict between VE-provided evidence and the DOT. SSR 00-04p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Nonetheless, because the ALJ did not rely on the VE's testimony pertaining to the DOT, it appears that the ALJ did not run afoul of SSR 00-04's requirement.